in favor of plaintiff, and from an order denying defendant's motion for a new trial, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Charles D. Ridgway, for appellant.

John Sabine Smith, for respondent.

O'BRIEN, J. The facts and questions of law here involved are fully stated in the opinion upon the former appeal (87 Hun, 398, 34 N. Y. Supp. 304), and it is therefore unnecessary to restate them. The judgment here is assailed for errors claimed to have been made in rulings upon evidence and in the charge of the judge. Upon the part of the plaintiff the disputed questions as to whether the employment was by the week or year, and as to whether his contract was assumed by the defendant, were sought to be supported by declarations of Bliss, with whom the contract was originally made, and who subsequently entered into partnership with the defendant. The important issue was as to whether the plaintiff's was a weekly or a yearly hiring. To support his contention he was permitted, over objection, to introduce the evidence of other employés that they were employed by the year. In addition, the court was asked to charge the jury "that the fact that the plaintiff remained in the employment of Charles E. Bliss & Co. after June 1, 1892, at the same wages, raises no presumption that the firm had employed him to May 1, 1893," which request was refused. As these two rulings were likewise erroneous, the judgment must be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.

---

TRADESMEN'S NAT. BANK v. BANK OF COMMERCE et al.

(Supreme Court, Appellate Division, First Department. June 5, 1896.)

1. NEGOTIABLE INSTRUMENTS—ACCOMMODATION INDORSER.
   In an action on a note, it appeared that plaintiff bank discounted P. & Co.'s paper to the full extent, consistent with its rules, and, in reply to an application for a further discount, suggested that the company get defendant bank to discount the paper, and allow plaintiff to rediscount it. The company made its note to defendant, who indorsed it, and sent it on to plaintiff, with whom it had an account, and the proceeds were placed to defendant's credit. Defendant placed the amount of the note to the credit of P. & Co., by whom it was at once checked out. This specific amount credited to defendant by plaintiff was not checked out by defendant, but checks in various amounts, in ordinary course of business, were drawn against its account, none of which apparently had any special reference to the amount of the discount. Held, that defendant was not an accommodation indorser. Fox v. Home Co. (Sup.) 35 N. Y. Supp. 896, distinguished.

2. SAME—ESTOPPEL—CASHIER'S AUTHORITY.
   Where a bank has received the proceeds of a discount, and used them, it cannot dispute its cashier's authority to apply for the discount.

Action by the Tradesmen's National Bank against the Bank of Commerce and the W. C. De Pauw Company on a promissory note. A verdict was directed for plaintiff, and defendant bank moves for a

new trial, on exceptions ordered to be heard in the first instance at the general term.   Denied.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

W. A. Butler, for the motion.

A. Blumenstiel, opposed.

VAN BRUNT, P. J.   The plaintiff in this action is a banking corporation, incorporated under the laws of the state of New York. The defendant is a corporation organized and incorporated under the laws of the state of Indiana, and doing a banking business at Indianapolis, in said state.   In November, 1891, down to and including the transactions referred to in the complaint in this action, one N. T. De Pauw, of New Albany, Ind., was extensively engaged in business in Indianapolis.   He was president of the W. C. De Pauw Company, a plate-glass manufacturing corporation, and also of the New Albany Bank, at New Albany, of the Merchants' Bank of the same place, and of the defendant the Bank of Commerce, of Indianapolis. At the solicitation of one Logan C. Murray, who was vice president of the plaintiff, De Pauw caused bank accounts of the banks of which he was president to be placed with the plaintiff; and the defendant bank kept a running account with the plaintiff, down to and including the transactions mentioned in the complaint in this action, against which the Bank of Commerce drew its checks and deposited in the ordinary way.   In June, 1892, the plaintiff loaned $20,000 to the New Albany Woolen Mills Company on its note, with the individual indorsement of De Pauw, and subsequently loaned $10,000 on like security.   On the 7th of November, 1892, De Pauw wrote to the plaintiff, stating:

"I will want to use about $20,000 for one of our factories about the 20th of this month.   If agreeable, I will send you the paper.   I do not think we will want to use any more this year," etc.

On the 11th of November, 1892, the cashier of the plaintiff wrote to De Pauw as follows:

"Referring to your favor of the 7th instant to Mr. Murray, officially, I beg to inform you that he is out of town at present, and is not expected to return for several days.   Your application, however, for $20,000, was placed before our board this morning, and they are unwilling to increase your line.   The activity in the money market continues.   Inasmuch as you already have $30,-000, our folks concluded that your present line was as large as your balances warrant."

On the 14th of November, De Pauw seems to have answered this letter; and on the 16th Mr. Grannis, the president of the plaintiff, wrote Mr. De Pauw as follows:

"Our cashier has handed me your favor of the 14th inst., and we also note your favor of same date to our Mr. Murray, who is now West.   I have taken pains to look over his letter to you of April 12th, to which you call our attention; and it refreshes my mind as to the circumstances connected therewith.   Mr. Murray was extremely anxious to bring with him some of his old friends to this bank, and we will endeavor to afford all the accommodation possible consistent with our banking rules.   We have already discounted to the extent of $30,000 directly to you, which really is as much as we can con-

sistently do, bearing in mind the fact that you have no direct account with us. Cannot you arrange to send new paper through one of the banks in which you are interested, and let us rediscount for them? This will commend itself to our board as more correct banking, and at the same time you will obtain the desired accommodation."

On the 19th of November, 1892, De Pauw wrote to the assistant cashier of the defendant, at Indianapolis, as follows:

"I hand you herewith note of the W. C. De Pauw Co., for six months, $20,000, payable to the Bank of Commerce. Please forward this with your indorsement to the Tradesmen's National Bank of New York. I have arranged with them to take it as a rediscount from the Bank of Commerce, so that you can safely check on it immediately. We will not check for any part of the proceeds of this until Wednesday, so that I presume you will not get it before Friday."

On the 21st of November, 1892, the assistant cashier of the defendant addressed the following letter to the cashier of the plaintiff:

"Please find inclosed W. C. De Pauw Co. notes, at 6 mos., from Nov. 23/92, for $20,000/00. Mr. N. T. De Pauw instructs me to send this to you for rediscount, he having made an agreement with you to that effect."

Objection having been made by the plaintiff to a note at six months, the cashier of the defendant, on the 25th of November, 1892, wrote to the cashier of the plaintiff as follows:

"Your favor of Nov. 23rd, 1892, returning W. C. De Pauw Co.'s note for 20 M., is at hand. I have wired them of the change you request, and will forward their note properly drawn as soon as read. This will probably cause our acct. to be over with you for a day or two, but will fix it as soon as possible."

And on the 26th of November, 1892, the cashier of the defendant wrote to the cashier of the plaintiff as follows:

"Inclosed find W. C. De Pauw Co.'s note for $20,000, time four mos., in correction of note at six months. Please credit us with the same, and oblige."

On the 28th of November the proceeds of the discount of the note were credited to the defendant in general account, and were drawn upon divers days subsequent thereto, and in various amounts. The defendant, upon forwarding the first note to the plaintiff, credited the amount to the W. C. De Pauw Company, and charged it to the plaintiff upon its books. The De Pauw Company checked this amount out of the defendant bank before the defendant bank received advice of the credit from the plaintiff. On the 27th of March, 1893, the due day of said $20,000 note, it was charged in the account of the defendant by the plaintiff; and on the 7th of April, 1893, a note for $10,000, made and indorsed in the same way as the $20,000 note, was received by the plaintiff, and discounted, and the net proceeds of that note credited to the defendant in its account with the plaintiff. When this $10,000 note became due, on the 3d of July, it was not paid at maturity, and remained unpaid and in the possession of the plaintiff until the 3d of October, 1893. On that day, the plaintiff received another note of $10,000, dated the 28th of September, which was discounted in the same way as the previous note, and the proceeds credited. This renewal note not having been paid at maturity, this action was brought to recover upon the same. Upon the trial, the court directed a verdict for the plaintiff, to which the defendant excepted; and the court or-

dered the exceptions to be heard in the first instance at the general term.

Neither party asked to go to the jury, and the questions presented are therefore only questions of law.   There does not seem to be any dispute as to the rule of law which is applicable in cases of this description.   It is conceded upon the part of the plaintiff that, if the indorsement of the defendant is to be considered as an accommodation indorsement, no recovery can be had.   The question, therefore, is as to whether the defendant was an accommodation indorser.   It seems to be assumed by the counsel on both sides that the note in question is to be treated as a renewal of the $20,000 note, which was the first transaction of this kind had between the defendant and the plaintiff.   Upon an examination of the accounts, however, it might be somewhat difficult to see that the note in suit has any connection with the $20,000 note.   That note seems to have fallen due on the 27th of March, 1893, and to have been charged by the plaintiff to the defendant upon that day; and it was not until the 7th day of April that the note falling due upon the 3d of July for $10,000 was discounted by the plaintiff, and placed to the credit of the defendant.   The note in suit was undoubtedly a renewal of this note.   But assuming that the first $10,-000 note was a renewal of the $20,000 note given in November, 1892, it is difficult to see upon what basis it can be held that the discount of that note was not a transaction between the plaintiff and the defendant.   It appears from the correspondence that, although De Pauw was in the habit of having notes of his corporations with his individual indorsement discounted by the plaintiff bank, he had no account with such bank.   The defendant had such an account, and in the transaction in question the proceeds of the discount of the note were credited by the plaintiff in its account with the defendant; and this specific money does not seem to have been checked out by the defendant, but checks in various amounts, in the ordinary course of business, were drawn against its account, none of such checks apparently having any special reference to the amount of this discount.   It is true that the evidence shows that the defendant placed the amount of this note to the credit of De Pauw and his companies, and that it was checked out of the Bank of Commerce at Indianapolis prior to the time when it was actually credited in the account of the defendant with the plaintiff.   It appears from this that the whole transaction was between the defendant and the plaintiff; that the defendant got the money, and used it in the ordinary course of its business, and drew against this credit precisely as against the other credits contained in this account; and that there was no difference in the treatment of this credit and that of any others which are contained in the account.

This case is clearly distinguishable from the case of Fox v. Home Co., 90 Hun, 365, 35 N. Y. Supp. 896.   In that case, at the time of the discount, the plaintiff drew his check for the proper amount to the order of the corporation, the indorser of the note, which was deposited to the credit of its bank account; and, on the same day,

that company, by its cashier, drew two checks payable to the order of the person for whose accommodation the discounted note was indorsed, amounting to the precise sum of the discount. It was held that the burden was upon the holder of the note to show that the corporation had power to indorse for accommodation, and also that the cashier' had power to make the indorsement in question or similar indorsements, and that the fact that the cashier of the corporation, without authority, deposited to the defendant's credit the check given by the plaintiff for the note, and then transferred the proceeds of the discount to another company by the checks of the corporation, was of no more significance than if he had given the money to such corporation, or had indorsed the check over to it. The proof in the case at bar is entirely barren of evidence going to show that the proceeds of the discount were paid over by the defendant, as such, to the De Pauw Company. The proceeds of the discount went to the credit of the defendant in its account with the plaintiff, and were drawn against generally in the conduct of its business; and it appears that, in its payment of the De Pauw checks upon it, it used its own money, as such checks were paid prior to the time when the defendant received any credit upon the discount of the $20,000 note. Under these circumstances, it cannot be said that the defendant has not received the proceeds of the discount; and, having received such proceeds, it cannot now be allowed to say, after having used such proceeds, that its cashier had no authority to apply for the rediscount.

The court having, upon the evidence in question, determined that this was not an accommodation indorsement, and there being no request to go to the jury upon this point (and, indeed, it is doubtful if the jury, under the facts appearing, would have been allowed to find that it was an accommodation indorsement), the exceptions must be overruled, and the motion for new trial denied, and judgment ordered for the plaintiff upon the verdict, with costs. All concur.